## McNEIL *vs.* MACON'S Admr.

1. When a claim against an insolvent estate is properly filed in the Court of Probate, and its validity is not contested by the administrator, or a creditor in the name of the administrator, in the manner prescribed by the act of 1843, the affidavit of the claimant is sufficient to establish it. In such case, the Judge of Probate has no power to call for other proof; if the affidavit is regular, it only remains for him to allow the claim, and charge the estate with its payment *pro rata.*

2. When the record shows, that a claim against an insolvent estate was properly filed in the Court of Probate, verified by the affidavit of the claimant, and that other evidence as to its validity was afterwards adduced before the judge, who rejected some of it, and considered the remainder insufficient to establish the claim, which he consequently refused to allow; and it is not shown by the record, either affirmatively or by fair implication, that the administrator, or any creditor in his name, ever called in question the justness or validity of the claim, nor that any issue was made up to test it, the proceeding is wholly without authority of law, and the judgment of the court rejecting the claim will be reversed on error.

(Chilton, J., *dissenting,* held, that in such case, if the record fails to show that the plaintiff in error raised any objection in the court below to the mode of procedure, or that he was forced to adopt it, or that a jury was denied him; and the only errors assigned are, the rejection of the claim and the exclusion of the evidence, then the bill of exceptions should be construed most strongly against him, and the Appellate Court should presume, that a formal issue was waived, and that the plaintiff consented to substitute the judge for the jury, in which case the decision of the court could not be reviewed, except in the exclusion of the evidence.)

3. In such case, the rejection of the claim is a final judgment, which will support a writ of error.

Error to the Court of Probate of Dallas.

It appears, by a recital in the record, that the estate of Macon had been declared insolvent, and within the time prescribed in the statute McNeil filed a claim in the clerk's office, verified by his own affidavit. This claim consisted of a title bond made by Macon to McNeil for a half section of land, which is described in it. McNeil made oath that he had paid all the purchase money, and that Macon had failed to make title to the lands, although he had demanded one of him; that the title of the land was in Macon's father, who was embarrassed, and against whom judgments were obtained, and execution issued, under which the land was sold by the sheriff of Macon county; that the title never was in Wm. R. Macon; affiant claimed, on account of this breach of covenant, that he was entitled to demand, and have of the estate of Macon the amount of the purchase money, with interest; which he deposes have never been paid to him. The record does not show that the claim was objected to in the manner prescribed by the statute. Clay's Dig. 194, § 11. Nor does it show that any issue was made up under this act. No decree of insolvency is found in it, nor any thing to show such insolvency, except the caption of the record, which recites that the proceedings contained in it, were had "In the matter of partial settlement of the estate of William R. Mason, deceased, duly declared insolvent;" it then sets forth, in a bill of exceptions, a mass of testimony sufficient to establish the claim, a part of which was excluded by the Judge of Probate, and the remainder was held by him not sufficient to charge the estate with the payment of the demand. To his action, in this respect, exceptions were taken by the counsel of McNeil, and a bill of exceptions, which appears in the record, was signed and sealed by the judge.

The decree of the court rejecting the claim is here assigned for error.

J. P. SAFFOLD, for plaintiff in error.

LAPSLEY & HUNTER, contra.

LIGON, J.—The proceedings in reference to the allowance or disallowance of claims against insolvent estates must be regulated by the provisions of the act of 1843 in relation to that subject.

By the ninth section of that act, it is provided that, "Every person, having any claim against such insolvent estate, shall file the same in the clerk's office of the said court, within six months after such estate is declared insolvent; and every such claim shall be verified by the affidavit of the claimant, and the clerk shall give a receipt therefor to the claimant, his agent or attorney, and shall endorse on such claim the day on which the same shall be filed; and shall keep a docket or list of such claims, which shall, at all times, be subject to the inspection of the administrators and creditors of the estate; and if no opposition shall be made to the allowance of such claim, in the manner hereinafter provided, within nine months after the time when said estate was declared insolvent, such claim shall be admitted and allowed, as a good and valid claim against the said estate, without further proof." Clay's Dig. 194, § 10.

By this section, the manner of presenting and filing claims against insolvent estates is clearly pointed out, and in cases in which no opposition to their allowance is made, in the form required by the next section of the act, the affidavit of the claimant alone is sufficient to establish it. Under this section no discretion is given to the Judge of the Probate Court. When a claim is filed according to its provisions, and its validity is not contested by the administrator, or a creditor in the name of the administrator, in the manner required by the tenth section of that act, he has no power to call for other proof; all that remains for him to do is, to see that the affidavit is regular, and if this be so, to allow the claim, and charge the estate with its payment *pro rata*.

The record in this case does not show, either affirmatively or by fair implication, that the administratrix, or any creditor in her name, ever called in question the justness or validity of the claim of the plaintiff in error, by filing objections in writing; nor does it any where appear, that an issue was made up to test it, or that any thing equivalent occurred in the Probate Court. From all that appears, the judge, *mero motu*, instituted an inquiry into the justice of the claim, heard some proof, and rejected other, and then pronounced against the validity of the claim, and refused to allow it. Such a proceeding is wholly without authority of law, and manifestly erroneous.

McNeil v. Macon's Adm'r.

As the proceeding to contest the claim was not regulated by the tenth section of the act of 1843, (Clay's Dig. 194, § 11,) and consequently the writ of error sued out in this case cannot be predicated upon the fourteenth section of that act, my own opinion is, that it is prematurely sued out, no final order or decree having been made within the meaning of the act of 1821. Clay's Dig. 297, § 4. But my brethren think differently, holding that the rejection of a claim against an insolvent estate by the Judge of Probate Court, is final as to that claim, and that a writ of error will lie to this court under the statute last referred to. To this effect is the case of Shortridge v. Easley, Admr., 10 Ala. 520. In that case, however, the writ of error could have been sustained under the act of 1843, for it was fully within the letter of that act, without resorting to the act of 1821, or in any manner invoking its aid. That portion of the decision I regard as a *dictum*, involving an erroneous exposition of the act referred to. As the writ of error is held to be regular by a majority of the court, I fully concur with them in the judgment of reversal.

It may be proper to remark, that if the judgment in the court below was rendered more than nine months after the estate was reported insolvent, no contest on this claim can now take place in that court; for, after that time, the administratrix and creditors are not allowed by law to question its justice, or to impeach its validity. The record sent up is very meagre, and probably defective; should this be the case, and the record below show that objections were there made, within the time and in the manner prescribed by the statute, (Clay's Digest 194, § 11,) that court will proceed to try the issue made on such objections, as that section of the act directs; or, if nine months had not elapsed from the report of insolvency to the time the judgment was rendered in the Probate Court, objections will be allowed until the expiration of that period, without taking into the computation the time the case has been pending in this court.

Let the judgment be reversed, and the cause remanded.

CHILTON, J.—I feel it to be my duty to dissent from the practice which I conceived is sanctioned by the opinion of my brethren in this case.

The record shows there was a contest respecting the validi-
ty of McNeil's demand, and he adduced before the judge
much proof in relation to it, some of which was rejected, and
the remainder was adjudged insufficient to support the claim,
which was consequently rejected.   The exclusion of the
proof by the judge, and his decision upon that which was ad-
mitted, in rejecting the claim, are assigned for error.   True,
no formal issue appears in the record; but this is not assigned
for error, and the rule of practice heretofore adopted is, to con-
sider no matters not assigned.   Minor's Rep. 11–23–35; Steb-
bins v. Fitch, 1 Stew. Rep. 180; Long v. Rodgers, 19 Ala.
Rep. 328.   It is said the rule goes farther, and justifies the
court in declining to consider matters which, though assigned
for error, are not insisted on in argument by the counsel.
Cunningham v. Carpenter & Watson, 10 Ala. Rep. 109.   The
general assignment that the court erred in rejecting the
claim, does not in my opinion raise the question of error in
allowing the parties to proceed in the absence of a formal is-
sue.   It was competent for the parties to have waived this in
the court below; and I presume they did, or the objection
would have been taken in that court, and assigned for error
in this.

Again: the statute requires the issue to be tried as at com-
mon law, that is, by a jury; but the parties can waive a trial
by jury, and submit the matter of contest to the adjudication
of the judge.   The bill of exceptions taken by McNeil, the
plaintiff in error, and which must therefore be construed
most strongly against him, shows, that he submitted his proof
to the judge, but fails to show that he was forced to do this,
or denied a jury, or that he raised any objection to this mode
of trial.   Then is it not the reasonable and legitimate intend-
ment, that he consented that the court, instead of the jury,
should decide upon the facts?   I hold that it is, and that the
verdict of the judge on the facts is as conclusive as if render-
ed by a jury, and is no more the subject of revision by this
court.   Ethridge v. Malempre, 18 Ala. R. 565.   If he erred
in excluding the proof, however, that error may be reviewed,
although he excluded it from his own consideration.

Under the decision of my brethren, the presumption is in-
dulged, *against* the regularity of the judgment, and in *favor* of

the *party excepting*, that he submitted proof in support of his claim, the justice and validity of which were not impugned, and that the court actually rejected the claim, of the correctness of which there was some proof, *although no objection was taken to its allowance.*

Thus, McNeil is enabled to speculate upon the chances; for had the court allowed his claim, it were well, and the judgment founded on the judge's finding irreversible; but having failed in the contest to obtain a judgment of allowance, he is permitted to reverse the decree rejecting the claim, because the record discloses no formal contestation. The result, therefore, is that the case is sent back that a formal issue may be joined; and it may be, to return upon us with the same questions which have already been twice argued, but are left undecided.